UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DENNIS FITSCHER,

          Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

**DECISION AND ORDER**
18-CV-848S

    1.    Plaintiff Dennis Fitscher brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his application for disability insurance benefits under Title II of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

    2.    Plaintiff protectively filed his application with the Social Security Administration on May 30, 2014. (R.[1] at 25, 143.) Plaintiff alleged disability beginning on August 16, 2013, due to peripheral neuropathy; erythromelalgia; nerve damage in hands; difficulty standing for more than 20 minutes; and high blood pressure. (R. at 168.) Plaintiff's application was denied (R. at 85-94), and Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ") (R. at 97).

    3.    On January 24, 2017, ALJ Eric Glazer held a hearing at which Plaintiff—represented by counsel—appeared and testified. (R. at 42-73.) At the time of the hearing, Plaintiff was 62 years old (R. at 47, 143), with a college education and past work experience as an assistant school superintendent and a consultant. (R. at 169.)

---

[1] Citations to the underlying administrative record are designated as "R."

4. The ALJ considered the case *de novo* and, on August 16, 2017, issued a written decision denying Plaintiff's application for benefits. (R. at 25-34.) On June 12, 2018, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1-4.) Plaintiff filed the current action, challenging the Commissioner's final decision,[2] on August 2, 2018. (Docket No. 1.)

5. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 7, 12.) Plaintiff filed a response on April 22, 2019 (Docket No. 13), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Plaintiff's motion is denied and Defendant's motion is granted.

6. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842, 852 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

---

[2] The ALJ's August 16, 2017 decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

7. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119, 126-127 (1987).

9. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant

> has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66, 70 (1983).

11. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff engaged in substantial gainful activity from May 2015 to August 2015. (R. at 17.) However, the ALJ also noted that there had otherwise been a continuous 12-month period during subsequent to the alleged onset date during which Plaintiff did not engage in substantial gainful activity. Id.

12. At step two, the ALJ found that Plaintiff has the severe impairments of erythromelalgia and diabetic neuropathy. Id. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 29.)

13. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform less than a full range of light work. (R. at 29-30.) Specifically, the ALJ determined that Plaintiff can lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently and can never operate foot controls with either foot. Id. Further, he can frequently operate hand controls and handle items with either hand, but has feel limitations with each hand occasionally as well as fingering limitations with the left hand frequently and with the right hand occasionally. Id.

14. The ALJ also determined that Plaintiff can sit for 6 hours but would need to alternate positions and stand for 5 minutes after every 30 minutes of sitting. Id. Further, Plaintiff can stand or walk for 2 hours but would have to sit for 5 minutes after every 15 minutes of standing or walking. Id. Finally, the ALJ found that Plaintiff

> can climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds, never balance, stoop occasional[ly], and no repetitive stoop, kneel, or crouch, never crawl. [He] can never work at unprotected heights, can work moving mechanical parts occasionally, in humidity and wetness occasionally, in extreme cold occasionally, never in extreme heat, [and] never in vibration. [H]is other environmental limitations include when ambulating on hard surfaces including concrete floors, permissive use of footwear facilitating temperature reduction and shock absorption of bilateral lower extremities. …

Id.

15. At step four, the ALJ found that Plaintiff is capable of performing past relevant work as an assistant superintendent, noting that "[t]his work does not require the

5

performance of work-related activities precluded by [his] residual functional capacity." (R. at 33.)  Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 34.)

16. Plaintiff's sole argument for remand is that the Appeals Council erred in finding that additional evidence submitted to it did "not show a reasonable probability that it would change the outcome of the ALJ's decision." (Docket No. 7 at 12-16.)  For the reasons that follow, this argument fails.

17. "The Appeals Council will review a denial of benefits if it receives "additional evidence that is new, material, and relates to the period on or before the ALJ's decision, and there is a reasonable probability that it would change the outcome of the decision," provided that the claimant can show good cause for not earlier providing the evidence to the ALJ. 20 C.F.R. §§ 404.970(a)(5), (b) (2017); see also Pennetta v. Comm'r of Soc. Sec., No. 18-CV-6093, 2019 WL 156263, at *3 (W.D.N.Y. Jan. 9, 2019.)

18. "Evidence is "new" if was not submitted to the ALJ and it is "not merely cumulative of what is already in the record." Jones v. Sullivan, 949 F.2d 57, 60 (2d Cir. 1990) (internal citation omitted).  Evidence is "material" if it is both relevant to the claimant's condition during the time period for which benefits were denied and probative, meaning there is a reasonable probability that it would have influenced the ALJ to decide the claimant's application differently. Webb v. Apfel, No. 98-CV-791, 2000 WL 1269733, at *14 (W.D.N.Y. Feb. 8, 2000) (citing Jones v. Sullivan, 949 F.2d 57). Such a "reasonable probability" of altering the ALJ's decision is found when the additional evidence "undermines a conclusion on which the ALJ's decision rests." Polanco v. Comm'r of Soc. Sec., No. 18-CV-6103(FPG), 2019 U.S. Dist. LEXIS 91529, at *3 (W.D.N.Y. May 31, 2019) (citing Stepp v. Colvin, 795 F.3d 711, 725-26 (7th Cir. 2015)).

19.     When the Appeals Council denies review after considering newly-submitted evidence, the Court "review[s] the entire administrative record, which includes the [additional] evidence, and determine[s], as in every case, whether there is substantial evidence to support the decision of the Secretary." Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996).

20.     Here, Plaintiff submitted a letter written by his treating neurologist, Dr. Alexander Rovner, dated December 12, 2017. (R. at 14-16.) Plaintiff argues that this letter meets all three requirements. The Court disagrees.

21.     Plaintiff relies on Simon v. Berryhill for the proposition that the letter is "new" evidence simply "because it did not exist until after the ALJ's decision and was not cumulative of other evidence in the record." (Docket No. 7 at 14) (citing Simon v. Berryhill, No. 16-CV-4088(FB), 2017 WL 4736732, at *2-3 (citing Pollard v. Halter, 377 F.3d 183, 193 (2d Cir. 2004)) ("Here, the evidence did not exist at the time of the ALJ hearing, so it is new …)).

22.     However, the additional evidence submitted in Simon consisted of 2015 MRIs that showed the claimant's spine and hip degeneration to be more extensive and "more severe than the findings in 2011" that were based on earlier MRIs. 2017 WL 4736732, at *2. In Pollard, the additional evidence included the results of a psychiatric assessment that indicated "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood" as well as information about a subsequent psychiatric hospitalization. 377 F.3d at 188. In both instances, the claimants submitted previously-unavailable test results that showed greater levels of impairment than were found in earlier tests. Such evidence is not merely cumulative. U.S. v. Jamil, 707 F.2d

7

638, 643 (2d Cir. 1983) (citing Hamling v. U.S., 418 U.S. 87, 127, 94 S.Ct. 2887, 2912, 41 L.Ed.2d 590 (1974)) ("Evidence is cumulative when it replicates other admitted evidence").

23. Plaintiff asserts that Dr. Rovner's December 12, 2017, letter is "not cumulative of other evidence in the record" but fails to support this contention. (Docket No. 7 at 14.) The letter defines erythromelalgia ("EM") in general as "a rare and frequently devastating disorder that can severely limit people's lives" "whose defining symptom is burning red extremities due to blood engorgement." (R. at 14.) Dr. Rovner stated that "[e]ven in mild-to-moderate cases, normal functioning such as walking, standing, working, socializing, and sleeping are impaired" and that "[Plaintiff] has reported problems with all of these daily functions." Id.

24. Dr. Rovner, who "saw [Plaintiff] monthly beginning in 2014, but now sees[s] him every three months" summarized Plaintiff's treatment history and reported symptoms, noting that Plaintiff's impairment "does not preclude him from traveling[3], but he is unable to stand in long lines and relies on his wife for support." Id.

25. Dr. Rovner opined that Plaintiff "cannot tolerate work that requires standing or walking more than 20 to 30 minutes, wearing socks and shoes, entering an interior or exterior warm environment, consuming alcohol and exposure to direct sunlight… [and] cannot sit for extended periods of approximately 30 to 45 minutes." (R. at 15.) Furthermore, Plaintiff should avoid "[w]ork that involves lifting and carrying weights, (5 to 10 pounds) during the course of a day [because this] places additional weight on the feet." Id.

---

[3] Plaintiff testified that he and his wife travel to Florida "to get away from the cold, gray winters." (R. at 64.)

8

26. Notably absent from the letter is any mention of recent test results, physical exams, or other objective findings that support these limitations or that indicate that Plaintiff's impairment is more severe than Dr. Rovner previously believed. Moreover, the record before the ALJ already contained evidence of Plaintiff's diagnosis, reported symptoms, treatment history, and footwear issues.

27. Even if this letter, which largely replicates other admitted evidence, was *not* found to be cumulative, Plaintiff has not shown a reasonable probability that it would have influenced that ALJ to decide his case differently.

28. The ALJ found Plaintiff's EM to be a severe impairment that, together with his neuropathy, warranted multiple exertional, manipulative, postural, and environmental limitations, including "permissive use of footwear facilitating temperature reduction and shock absorption." (R. at 29, 226.) The ALJ detailed these limitations in a written interrogatory submitted to vocational expert ("VE") Jay Steinbrenner. (R. at 214-19.)

29. Responding to the interrogatory, the VE noted that Plaintiff's past relevant work was all performed at the sedentary or light exertion level and determined that such work would not be precluded by Plaintiff's limitations. (R. at 226-27.) The VE also determined that Plaintiff's past work as an educational consultant and assistant superintendent were performed at the sedentary exertion level. (R. at 225.) Plaintiff's testimony, including the description of his return to work during the summer of 2015, corroborates this finding.

30. Plaintiff testified that he returned to work at the school district from May to August of 2015, to cover for an administrator who was out on leave for the summer. (R. at 48.) Working from the air-conditioned district office, Plaintiff wrote federal grant

applications to secure funding for the district, worked with school board members, and supervised the summer reading program. (R. at 48-49.) He avoided walking to other, non-air-conditioned buildings. Id. Plaintiff earned in excess of $20,000 during this time, far above the $3,270 substantial gainful activity threshold for that period. (R. at 27.)

31. Based on the medical evidence, Plaintiff's testimony, and Mr. Steinbrenner's expert opinion, the ALJ found that Plaintiff is capable of performing his past relevant work as an assistant superintendent. (R. at 33.) Even if supported by objective findings and fully-credited, Dr. Rovner's opinion letter would not undermine the ALJ's conclusion that Plaintiff is capable of performing such work.

32. The Court finds that the Appeals Council did not err in determining that Dr. Rovner's December 21, 2017, letter "does not show a reasonably probability that it would change the outcome of the decision" and further finds that the ALJ's denial of benefits in this case is supported by substantial evidence. Therefore, remand is not warranted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 7) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 12) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated: November 10, 2019
Buffalo, New York

s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge